■ MARK BOLTAX, Respondent, v JOY DAY CAMP, Also Known as KISSENA PARK JEWISH EDUCATIONAL CENTER, et al., Appellants.—In a negligence action to recover damages for personal injuries, defendants separately appeal from an order of the Supreme Court, Queens County (Goldstein, J.), dated July 16, 1984, which denied their respective motions for summary judgment dismissing the complaint.

Order reversed, on the law, without costs or disbursements, defendants' motions for summary judgment granted, and complaint dismissed.

On the evening of August 7, 1980, at about 11:45 P.M., the plaintiff, Mark Boltax, then 20 years old, dove head first into a swimming pool located on property owned by defendant Kissena Park Jewish Educational Center, and leased to defendant Flushing Country Day School, Inc. Mr. Boltax was left a quadriplegic as a result of this ill-fated dive.

Plaintiff commenced this lawsuit against the defendants alleging, *inter alia,* that they had negligently maintained the pool and the premises surrounding the pool, that they had failed to post adequate safety warnings, that the lifeguard chair had been improperly positioned, and that the water level in the pool was improper.

After completion of pretrial depositions, both defendants moved for summary judgment, pursuant to CPLR 3212, on the grounds that the injuries sustained by plaintiff were not proximately caused by any act or omission on their part, and that the miscalculated dive was the sole cause of his injuries.

Special Term denied defendants' motions, stating, in pertinent part, that "[d]efendants' liability to plaintiff, if any, depends on the reasonableness of their conduct under all the facts and circumstances, including the likelihood of injury to others and the burden of avoiding the risk"; and that "[w]hat safety precautions may reasonably be required for a land owner is almost always, with rare exceptions not relevant herein, a question of fact for the jury".

We find, however, that the summary judgment motions should have been granted.

Plaintiff revealed at his pretrial deposition that at about 11:00

P.M. on August 7, 1980, he and a number of his friends had gained entry onto the premises through a hole in the fence surrounding the pool. Plaintiff, although realizing that the pool was not "open for business", nonetheless jumped in and swam around for approximately 45 minutes, without consequence. Although the lights at the pool had been extinguished before plaintiff arrived, he was able to familiarize himself with the pool and its varying water depths. Plaintiff, aware that the premises were utilized as a day camp for "young kids", observed that the water level was not normal around the pool, estimating that it was 1½ to 2 feet below the edge of the pool. The edge of the pool facing him when he first entered the premises was the deep end. The water there was "a little bit over [his] head". He swam "at one time or another, mostly all over [the] pool". At the shallow end he observed that he could sit down and the water came only up to his waist. Around the lifeguard chair, he was able to stand up, and the water came up only to his chest or stomach, "somewhere across the torso".

The pool was not equipped with a diving board. Plaintiff, however, after 45 minutes of swimming in the pool, climbed onto the lifeguard chair and executed a series of dives from the platform which protruded from the chair. His first three dives were "flat-out" dives, "like a belly flop", and were uneventful. Despite his appreciation of the shallowness of the water, plaintiff then attempted to negotiate a type of dive whereby entry into the water would be head first at a perpendicular angle. Unfortunately, plaintiff's head struck the bottom of the pool while his "legs were still out of the water and [he] was still coming down". He now seeks to hold defendants legally accountable for the resulting injuries.

Although a landowner owes a single duty of reasonable care, and foreseeability is the measure of liability (see, Basso v Miller, 40 NY2d 233, 241), it is clear under the facts presented at bar that the direct cause of plaintiff's injuries was the dive that he executed in water which was far too shallow for that type of dive.

Plaintiff contends that the defendants negligently maintained the fence enclosing the pool and that had the pool been more efficaciously secured, he would never have been injured. Although there is evidence that the defendants knew that unauthorized individuals had been enjoying the pool at night, and that they gained access by breaking into or climbing over the wooden picket fence, it clearly was not the hole in the fence that caused the plaintiff to dive off the lifeguard chair in

the manner that he did. "Evidence of negligence is not enough by itself to establish liability. It must also be proved that the negligence was the cause of the event which produced the harm sustained by one who brings the complaint" *(Sheehan v City of New York,* 40 NY2d 496, 501; *see also, Martinez v Lazaroff,* 48 NY2d 819; *Lee v Flight Safety,* 63 AD2d 994).

Liability should not attach merely because a resourceful and determined trespasser was able to find a way to gain entry onto the premises. At best, the hole in the fence "merely furnished the occasion for the accident to occur, rather than its proximate cause" *(Mack v Altmans Stage Light. Co.,* 98 AD2d 468, 473). The pool did not give a deceptive appearance of safety, and the plaintiff, an admittedly proficient swimmer and diver, knew or should have known of the risks and the foreseeable consequences of his voluntary acts *(see, Smith v Stark,* 111 AD2d 913; *Colosimo v May Dept. Store Co.,* 466 F2d 1234; *Bradshaw v Paduano,* 55 AD2d 828, 829). Moreover, a person who engages in such a sport as swimming accepts the known dangers inherent therein *(see, Curcio v City of New York,* 275 NY 20, 23-24, *rearg denied* 276 NY 610; *Herman v State of New York,* 94 AD2d 161, 164, *affd* 63 NY2d 822, *rearg denied* 64 NY2d 755). Other than suggesting that the defendants should have undertaken the formidable task of ensuring that the pool remain completely inaccessible to trespassers, there is no evidence that the defendants placed the plaintiff in any position of danger or that they could have averted the accident by the exercise of any greater degree of care. Nor is there evidence of any defect in the construction of the swimming pool aside from conclusory and self-serving allegations offered by plaintiff's counsel.

Where only one conclusion may be drawn from the established facts, the question of legal cause may be decided as a matter of law *(see, Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315, *rearg denied* 52 NY2d 784).

Thus, the defendants are entitled to summary judgment dismissing the complaint, since neither the defendants' acts nor their omissions were the proximate cause of the plaintiff's injuries. Thompson, J. P., Weinstein, Niehoff and Lawrence, JJ., concur.